MICHAEL J. McCUE (SBN 296425)
mmccue@lrrc.com
G. WARREN BLEEKER (SBN 210834)
wbleeker@lrrc.com
JONATHAN W. FOUNTAIN (NV Bar No. 10351)
(*Pro hac vice application to be submitted*)
jfountain@lrrc.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
655 North Central Avenue, Suite 2300
Glendale, CA 91203
Telephone: 626.795.9900
Facsimile: 626.577.8800

*Attorneys for Plaintiff*
*HDMI Licensing, LLC*

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

HDMI LICENSING, LLC, a Delaware limited liability company,

Plaintiff,

v.

ONE DIAMOND ELECTRONICS, INC., a Texas corporation, and AUGUSTO ARRIAGA, an individual,

Defendants.

Case No. '16CV0879 AJB WVG

Copyright/Trademark/Unfair Competition

**COMPLAINT**

Demand for Jury Trial

For its Complaint, Plaintiff HDMI LICENSING, LLC, a Delaware limited liability company ("HDMI Licensing" or "Plaintiff"), alleges the following:

**NATURE OF COMPLAINT**

1. This case involves claims for direct, contributory and vicarious trademark counterfeiting, trademark infringement, and unfair competition under federal law, and related state and common law claims, arising from Defendants' infringement of Plaintiff's HDMI trademark in Mexico and elsewhere, including,

without limitation, by importing counterfeit HDMI components into the United States and exporting them to Mexico for use in the manufacture and sale of digital televisions ("Digital TVs") containing counterfeit and unlicensed HDMI technology and bearing counterfeits of Plaintiff's HDMI trademark.

## JURISDICTION

2. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121, because this is a trademark action which arises under the laws of the United States.

3. This Court has general personal jurisdiction over the Defendants. Defendant One Diamond Electronics, Inc. ("Diamond USA") is a Texas corporation with its principal place of business in this judicial district. Defendant Augusto Arriaga ("Arriaga") is the President and CEO of Diamond USA and resides in this judicial district. Defendants conduct business on a continuous and systematic basis from their offices in this judicial district.

## VENUE

4. Venue for this action lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to HDMI Licensing's claims, specifically, the infringement of HDMI Licensing's intellectual property, has occurred and is continuing to occur in this judicial district.

## PARTIES

5. Plaintiff HDMI Licensing, LLC (defined above as "HDMI Licensing") is a Delaware limited liability company with its principal place of business in Sunnyvale, California. At the relevant time, HDMI Licensing wasa subsidiary of Silicon Image, Inc., a provider of semiconductors for the mobile, consumer electronics and personal computers and manufacturer of wireless and wired connectivity products.

6. Defendant One Diamond Electronics, Inc. (defined above as

Lewis Roca ROTHGERBER CHRISTIE
655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

"Diamond USA") is a Texas corporation with its principal place of business at 1450 Frazee Road, Suite 303, San Diego, California 92108.

7. Defendant Augusto Arriaga (defined above as "Arriaga") is a Mexican citizen who resides in Rancho Santa Fe, California. Arriaga is the President and CEO of Diamond USA in San Diego, California.

## GENERAL ALLEGATIONS

### The HDMI Specification and Trademark

8. Over a decade ago, Silicon Image created the High-Definition Multimedia Interface specification ("the HDMI Specification") in collaboration with six other companies: Hitachi, Panasonic Corporation, Philips, Sony, Technicolor S.A. (formerly Thomson SA.) and Toshiba. Silicon Image, Inc. and the HDMI co-developers are known collectively as the "HDMI Founders."

9. The HDMI Specification that Silicon Image helped pioneer is a groundbreaking technology that enables a consumer to use a single cable to connect a high-definition source device—such as a cable TV set-top box, a Blu-ray player, an HD-DVR, or an Xbox—to a high-definition display such as a digital television, monitor, video projector, or digital audio device.

10. This is an example of an HDMI cable:



11. To understand the significant advance that the HDMI Specification represents, it is helpful to examine the connection between a Digital TV and a cable TV set-top box. To connect a Digital TV to a cable TV set-top box, a user inserts one end of the HDMI cable into the cable TV set-top box's HDMI output

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

port and the other end into the Digital TV's HDMI input port, as pictured below:




12. Connecting a cable box to a Digital TV without using HDMI is a different and inferior experience. A consumer would typically need to use three cables, each carrying an analog signal, to complete the hookup. The result is a clutter of cables and inferior image quality. The HDMI Specification, which delivers uncompressed audio and video, offers the finest image quality of any cable type available today.

13. The HDMI Specification is ubiquitous and is the undisputed standard for connecting high-definition transmitters to high-definition displays. Beginning in 2009, almost all Digital TVs manufactured incorporate HDMI technology. As of March 2016, the HDMI Specification had over 1,700 adopters and could be found on over 3 billion HDMI-enabled products shipped since the inception of the specification.

14. The HDMI trademarks (defined below) are also ubiquitous, appearing on HDMI-enabled devices and HDMI cables around the world. The HDMI trademarks convey to consumers that products marked with the HDMI trademarks comply with the technical elements of the HDMI Specification, and have been tested and certified to work seamlessly with other products bearing the HDMI trademarks.

15. The "HDMI Logo" is comprised of the stylized letters "HDMI"

Lewis Roca ROTHGERBER CHRISTIE
655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

followed by the words "High-Definition Multimedia Interface" as shown below:




16. HDMI Licensing has registered several trademarks containing the HDMI designation, including the HDMI Logo, on the Principal Register of the United States Patent and Trademark Office in connection with a range of goods and services, including audio-visual and information communications products, including but not limited to:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| HDMI | 3,268,924 | July 24, 2007 |
| HDMI HIGH-DEFINITION MULTIMEDIA INTERFACE | 3,442,135 | June 3, 2008 |

(Collectively, with the HDMI Logo, the "HDMI Trademarks")

17. The registrations of the HDMI Trademarks are valid and subsisting. They have not been abandoned, revoked, or cancelled.

18. The HDMI Trademarks are inherently distinctive and valuable. HDMI Licensing has invested substantial time, effort and money to develop and promote public recognition of the HDMI Trademarks.

19. As the agent for the specification, HDMI Licensing is responsible for the licensing of the HDMI Trademarks to adopters, and for the maintenance, policing, and enforcement of the HDMI Trademarks to ensure that the high-quality goods and services that the public has come to expect from HDMI-branded products continues in the future.

20. In addition to being responsible for licensing and administering the HDMI Specification and the HDMI Trademarks, HDMI Licensing is responsible for promoting the HDMI standard and providing education regarding the benefits of

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

HDMI technology to retailers and consumers. HDMI Licensing currently licenses intellectual property rights to over 1,700 of the world's largest consumer electronics, mobile device, and personal computer manufacturers who develop HDMI-enabled products, including Apple, Inc., Samsung Electronics, Inc., and Sharp Corporation. HDMI licensees are identified on HDMI Licensing's website at http://www.hdmi.org.

21. The HDMI Founders established authorized testing centers, where licensed manufacturers can submit their products for compliance testing. A designation that a product is "Fully Compliant" means that the product implements all portions of the High-Definition Multimedia Interface required for the specific type of licensed product, and that such implementation has passed all applicable compliance testing procedures.

22. In sum, "HDMI" does not mean just a place to plug in a physical connector on a Digital TV. "HDMI" signifies the physical, logical, and electrical integrity and interoperability of every finished "HDMI" product.

23. Proper use of the HDMI Trademarks protects consumers against confusion, frustration, and economic loss from untested products sold by unlicensed manufacturers, which may not be fully and properly interoperable. It also prevents consumer dissatisfaction with products that use authentic, licensed, HDMI products, and preserves the reputation and goodwill in the HDMI Specification and the HDMI Trademarks. Unlicensed and counterfeit "HDMI" products that bear markings that are the same as or similar to the HDMI Trademarks provide consumers with a false assurance that the products they have purchased are reliable and conform to HDMI's high standards and rigorous compliance testing when, in fact, they do not.

24. The HDMI Trademarks also safeguard the interests and investments of licensed manufacturers, content owners and service providers, whose products and services derive significant value from HDMI technology since the HDMI

Lewis Roca ROTHGERBER CHRISTIE
655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

Trademarks signify products that are fully interoperable and accurately transmit and render commercial audiovisual content to the highest technical standards.

25. Unlicensed uses of the HDMI Trademarks jeopardize the economic interests, goodwill, and reputation of licensed manufacturers and their authentic, licensed, and compliant products. Unlicensed and counterfeit "HDMI" products jeopardize the systems into which they are placed because they may not conform with HDMI Licensing's design specifications, production standards, or quality control, and thus lack reliability. A consumer will not know whose products cause an incompatibility and may understandably, but wrongly, pin blame on licensed, fully-compliant products. In short, HDMI Licensing must preserve the goodwill associated with the HDMI Trademarks, for the benefit of consumers who use products with HDMI technology, and the companies that have invested billions of dollars in compliant HDMI products based on the reputation and integrity of the HDMI Specification and the HDMI Trademarks.

26. HDMI Licensing invests significant time and resources identifying counterfeit products – those that are marketed, promoted and sold using the HDMI Trademarks but are not in fact HDMI compliant or are not licensed HDMI products.

**The Defendants' Infringing Conduct**

27. Arriaga is in the consumer electronics business. He owns and controls three corporations. He is the President and CEO of Diamond USA, which is located at 1450 Frazee Road, Suite 303, San Diego, California 92108. He is the sole owner and shareholder of Diamond Electronics S.A. de C.V. ("Diamond Mexico"), which is located at Boulevard Juan Alessio No. 7510, Parque Industrial Pacifico, Tiajuana, Baja California, Mexico. And, he is the majority shareholder of Comercializadora Milenio S.A. de C.V. ("Diamond Milenio"), which is located at Calle Juan Salvador Agraz, No. 65, Piso 22, Santa Fe, Delegación Cuajimalpa de Morelos, Mexico City, Distrito Federal, C.P. 05300.

28. Diamond USA is a manufacturer of electronic consumer products,

including, among others, Digital TVs. Upon information and belief, Diamond USA purchased counterfeit HDMI components from China and elsewhere, and imported them into the United States. Upon information and belief, Diamond USA shipped these components from the United States to Diamond Mexico. Upon information and belief, at the direction and under the control of Diamond USA and Arriaga, Diamond Mexico used the components it received from Diamond USA to manufacture Digital TVs that contain counterfeit and unlicensed HDMI technology and bear counterfeits of HDMI's trademarks, at its manufacturing facility in Tijuana, Mexico.

29. Upon information and belief, at the direction and under the control of Diamond USA and Arriaga, Diamond Milenio sells Digital TVs manufactured by Diamond Mexico throughout Mexico and elsewhere under the MITSUI, POLAROID, and ATIVO brands.

30. Upon information and belief, Digital TVs sold under the ATIVO brand are sold to companies such as COMARKET, who then sells them to large retailers such as Walmart and other big box retailers and department stores. These retailers then sell the infringing Digital TVs to consumers.

31. HDMI Licensing has not authorized, consented to, or licensed Arriaga, Diamond USA, Diamond Mexico or Diamond Milenio to use HDMI technology in their products. In fact, none of the Digital TVs manufactured or sold by these entities have been submitted to HDMI Licensing for testing and approval.

32. On February 26, 2015, HDMI Licensing sent a letter to Diamond USA demanding that it either become a licensed adopter or, if it believed that it was in compliance, provide certain documentation. Diamond USA did not respond.

33. On April 2, 2015, HDMI Licensing, through counsel, sent another letter to Diamond USA demanding that it either become a licensed adopter or, if it believed that it was in compliance, provide certain documentation to demonstrate compliance.

Lewis Roca ROTHGERBER CHRISTIE
655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

34. On April 10, 2015, Diamond USA responded through counsel and indicated that it disagreed with HDMI Licensing's contentions but it had removed a website that contained unlicensed HDMI products.

35. On May 8, 2015, HDMI Licensing, through counsel, sent another letter to Diamond USA explaining that Diamond USA's response did not resolve the issue. HDMI Licensing demanded yet again that Diamond USA either become a licensed adopter or, if it believed that it was in compliance, provide certain documentation to demonstrate compliance. HDMI Licensing also warned Diamond USA that its failure to comply constituted willful trademark infringement. Diamond USA did not respond.

36. Upon information and belief, Arriaga and Diamond USA are continuing their unlawful conduct.

**HDMI Licensing Has Been Irreparably Harmed**

37. HDMI Licensing has suffered and is continuing to suffer irreparable harm and financial injury as the results of the Defendants' conduct. The counterfeit and unlicensed HDMI products being manufactured and sold by Defendants are not subject to the same stringent quality controls as authentic, licensed, HDMI products. As a result, upon information and belief, the counterfeit and unlicensed HDMI products may be of sub-standard quality, unreliable, and unable to deliver the exceptional signal and image quality offered by authentic, licensed, HDMI products.

38. Upon information and belief, consumers who have purchased or otherwise obtained Digital TVs or other products that are not HDMI licensed products and who have had negative experiences with the sub-standard products, falsely attribute those negative experiences to HDMI Licensing. This is likely to erode the substantial goodwill HDMI Licensing has spent years and millions of dollars in developing. In addition, HDMI Licensing is losing substantial licensing fees from consumers' purchases of the Defendants' unlicensed products.

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

Lewis Roca
ROTHGERBER CHRISTIE

39. The Defendants' importation of counterfeit HDMI components into the United States and shipment of these components to Mexico for use in Digital TVs that are not licensed by HDMI Licensing has created a substantial effect on U.S. foreign commerce or, at minimum, some effect on U.S. foreign commerce. HDMI Licensing has suffered a loss of licensing revenue and potential or actual harm to the reputation and goodwill it has acquired in the HDMI Trademarks.

40. The effect the Defendants' unlawful activities have had on U.S. foreign commerce is sufficiently great to present a cognizable injury to HDMI Licensing. Indeed, upon information and belief, the Defendants have obtained sales orders for digital televisions from the Mexican government worth more than $150,000,000 USD, which resulted in substantial lost licensing revenue for HDMI Licensing.

41. Moreover, the interests of and links to U.S. foreign commerce are sufficiently strong in relation to those of other nations to justify the extraterritorial application of the Lanham Act. First, there is no conflict with Mexican law as, upon information and belief, there have been no proceedings between the parties in Mexico. Second, HDMI Licensing and Diamond USA are U.S. citizens. While Arriaga is a Mexican citizen, he lives and works in the United States. Third, since Diamond USA and Arriaga are located in the United States and have orchestrated the Defendants' infringing activities from the United States, an injunction will achieve compliance with the Lanham Act. Fourth, the effects of the Defendants' conduct are more significantly felt in the United States than in Mexico. The revenues from Diamond USA's activities are realized in the United States. Diamond USA pays U.S. and California taxes on its revenue, but does not pay taxes to Mexico. Fifth, because the Defendants' infringement of the HDMI Trademarks has been intentional, this demonstrates an explicit purpose to harm U.S. commerce.

42. In light of the foregoing, the effect of the Defendants' activities on U.S. commerce was foreseeable.

43. Finally, the relative importance of the Defendants' violations weighs in

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

favor of applying the Lanham Act extraterritorially because HDMI Licensing is a U.S. limited liability company that has been substantially injured by the Defendants' intentional acts of infringement.

**COUNT I**

**(Trademark Infringement under the Lanham Act, 15 U.S.C § 1114(a), against Arriaga)**

44. HDMI Licensing incorporates the foregoing paragraphs as if fully set forth herein.

45. HDMI Licensing is the owner of the HDMI Trademarks.

46. Diamond Mexico has manufactured Digital TVs and other products purporting to contain authentic, licensed, HDMI technology and bearing the HDMI Trademarks, and Diamond Milenio has sold such Digital TVs.

47. Diamond Mexico and Diamond Milenio have, without HDMI Licensing's consent, used in commerce, a reproduction, counterfeit, copy, or colorable imitation of the HDMI Trademarks in connection with the sale, offering for sale, distribution, or advertising of Digital TVs and other products.

48. Diamond Mexico's and Diamond Milenio's use of the HDMI Trademarks has caused and is likely to continue to cause confusion, or to cause mistake, or to deceive consumers as to the source or origin of HDMI Licensing's goods and services.

49. Upon information and belief, Defendant Arriaga is the moving, active, conscious force behind Diamond Mexico's and Diamond Milenio's trademark infringement.

50. As a direct and proximate result of Defendants' conduct, HDMI Licensing has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

/ / /

/ / /

**COUNT II**

**(Contributory Trademark Infringement under the Lanham Act, 15 U.S.C § 1114(a), against Diamond USA and Arriaga)**

51. HDMI Licensing incorporates the foregoing paragraphs as if fully set forth herein.

52. HDMI Licensing is the owner of the HDMI Trademarks.

53. Diamond Mexico has manufactured Digital TVs and other products purporting to contain authentic, licensed, HDMI technology and bearing the HDMI Trademarks, and Diamond Milenio has sold such Digital TVs.

54. Diamond Mexico and Diamond Milenio have, without HDMI Licensing's consent, used in commerce a reproduction, counterfeit, copy, or colorable imitation of the HDMI Trademarks in connection with the sale, offering for sale, distribution, or advertising of Digital TVs and other products.

55. Diamond Mexico's and Diamond Milenio's use of the HDMI Trademarks has caused and is likely to continue to cause confusion, or to cause mistake, or to deceive consumers as to the source or origin of HDMI Licensing's goods and services.

56. Diamond USA and Arriaga have intentionally induced Diamond Mexico and Diamond Milenio to infringe the HDMI Trademarks. Diamond USA and Arriaga have intentionally supplied counterfeit HDMI components to Diamond Mexico with the actual or constructive knowledge that Diamond Mexico was installing the components in Digital TVs that bore the HDMI Trademarks and that were not licensed or compliant with the HDMI standards. Diamond USA and Arriaga also had actual or constructive knowledge that Diamond Milenio was selling or distributing Digital TVs that bore the HDMI Trademarks and that were not licensed or compliant with the HDMI standards.

57. Diamond USA and Arriaga have materially contributed to or induced the infringement by Diamond Mexico and Diamond Milenio.

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

58. Therefore, Diamond USA and Arriaga are contributorily liable for Diamond Mexico and Diamond Milenio's infringement.

59. As a direct and proximate result of the Defendants' conduct, HDMI Licensing has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**COUNT III**

**(Vicarious Trademark Infringement under the Lanham Act, 15 U.S.C § 1114(a), against Arriaga)**

60. HDMI Licensing incorporates the foregoing paragraphs as if dully set forth herein.

61. As the sole owner and shareholder of Diamond Mexico and the majority shareholder of Diamond Milenio, Arriaga had the right and ability to supervise the infringement by Diamond Mexico and Diamond Milenio.

62. Upon information and belief, as the sole owner and shareholder of Diamond Mexico and the majority shareholder of Diamond Milenio, Arriaga received a direct financial benefit from their infringement.

63. Therefore, Arriaga is vicariously liable for Diamond Mexico and Diamond Milenio's infringement.

64. As a direct and proximate result of the Defendants' conduct, HDMI Licensing has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**COUNT IV**

**(Trademark Counterfeiting under the Lanham Act, 15 U.S.C § 1114(b), against Diamond USA and Arriaga)**

65. HDMI Licensing incorporates the foregoing paragraphs as if dully set forth herein.

66. Diamond Mexico has manufactured Digital TVs and other products purporting to contain authentic, licensed, HDMI technology and bearing the HDMI

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

Trademarks, and Diamond Milenio has sold such Digital TVs.

67. Diamond Mexico and Diamond Milenio have, without HDMI Licensing's consent, used a spurious mark that is identical or substantially indistinguishable from the HDMI Trademarks which constitutes use of a counterfeit mark in violation of 15 U.S.C. § 1114.

68. The products manufactured and sold by Diamond Mexico and Diamond Milenio are within the scope of HDMI Licensing's federal registrations for the HDMI Marks.

69. Upon information and belief, Arriaga is the moving, active, conscious force behind Diamond Mexico's and Diamond Milenio's trademark counterfeiting.

70. As a direct and proximate result of Defendants' conduct, HDMI Licensing has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation and goodwill.

**COUNT V**

**(Contributory Trademark Counterfeiting under the Lanham Act, 15 U.S.C § 1114(b), against Diamond USA and Arriaga)**

71. HDMI Licensing incorporates the foregoing paragraphs as if dully set forth herein.

72. Diamond USA and Arriaga intentionally induced the trademark counterfeiting committed by Diamond Mexico and Diamond Milenio.

73. Diamond USA and Arriaga exercised direct control over Diamond Mexico's manufacture and Diamond Milenio's sales of Digital TVs containing counterfeit HDMI technology and bearing counterfeit HDMI trademarks, and have personally authorized, directed or ratified the use of counterfeit HDMI trademarks on infringing Digital TVs.

74. As the direct and proximate result of the Defendants' conduct, HDMI Licensing has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation and goodwill.

Lewis Roca ROTHGERBER CHRISTIE
655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445
Lewis Roca ROTHGERBER CHRISTIE

**COUNT VI**

**(Vicarious Trademark Counterfeiting under the Lanham Act, 15 U.S.C § 1114(b), against Arriaga)**

75. HDMI Licensing incorporates the foregoing paragraphs as if fully set forth herein.

76. As the sole owner and shareholder of Diamond Mexico, and as the majority shareholder of Diamond Milenio, Arriaga had the right and ability to supervise the manufacture and sales of Digital TVs by Diamond Mexico and Diamond Milenio, and directed Diamond Mexico to manufacture, and Diamond Milenio to sell, Digital TVs containing counterfeit HDMI technology and bearing counterfeits of the HDMI Trademarks.

77. Upon information and belief, as the sole owner and shareholder of Diamond Mexico, and as the majority shareholder of Diamond Milenio, Arriaga received a direct financial benefit from their acts of trademark counterfeiting.

78. Therefore, Arriaga is vicariously liable for Diamond Mexico's and Diamond Milenio's trademark counterfeiting.

79. As a direct and proximate result of the Defendants' conduct, HDMI Licensing has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**COUNT VII**

**(Unfair Competition under Cal. Bus. & Prof. Code § 17200 against Diamond USA and Arriaga)**

80. HDMI Licensing incorporates the foregoing paragraphs as if fully set forth herein.

81. California Business and Professions Code § 17200, *et seq.*, states that unfair competition shall mean and include any "unlawful, unfair or fraudulent business act or practice."

82. Defendants' unlawful and improper actions, as set forth above, are

likely to cause confusion, mistake, and/or deception as to the source, origin, and/or sponsorship of Defendants' Digital TVs, and to falsely mislead consumers into believing that the counterfeit HDMI technology contained within those products, and the counterfeit HDMI marks on those products and their packaging are those of, affiliated with, and/or approved by, HDMI Licensing.

83. Accordingly, Diamond USA and Arriaga's unauthorized use of HDMI Licensing's technology and trademarks constitutes unfair competition in violation of California Business and Professionals Code § 17200, *et. seq.*

84. Diamond USA and Arriaga's acts of unfair competition have caused HDMI Licensing to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

85. Diamond USA and Arriaga's acts of unfair competition, unless enjoined by this Court, will continue to cause HDMI Licensing to sustain irreparable damage, loss and injury, for which HDMI Licensing has no adequate remedy at law.

86. In light of the foregoing, HDMI Licensing is entitled to an injunction under California Business and Professions Code § 17200 *et seq.* restraining Diamond USA and Arriaga from engaging in further such unlawful conduct, as well as to restitution of those amounts unlawfully obtained by Defendants through its wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff HDMI Licensing respectfully prays that the Court enter judgment in its favor and against Defendants, and that the Court:

A. Enter a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a) and Cal. Bus. & Prof. Code § 17200, prohibiting the Defendants and their respective officers, agents, servants, employees, and/or all other persons acting in concert or participation with them, from using the HDMI Trademarks, or any confusingly similar variations thereof, in commerce;

Lewis Roca ROTHGERBER CHRISTIE
655 North Central Avenue, Suite 2300
Glendale, CA 91203-1445

B. Enter an order, pursuant to 15 U.S.C. § 1117(a), awarding HDMI Licensing: (a) Defendants' profits; (b) HDMI Licensing's actual damages; and (c) the costs of the action;

C. Enter an order, pursuant to 15 U.S.C. § 1117(b), awarding HDMI Licensing "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and prejudgment interest or, in the alternative, find that this is an exceptional case within the meaning of 15 U.S.C. § 1117(a) and enter an order awarding HDMI Licensing its reasonable attorneys' fees;

D. If HDMI Licensing so elects, enter an order, pursuant to 15 U.S.C. § 1117(c), awarding HDMI Licensing statutory damages of up to $2,000,000 per mark per type of infringing goods sold, offered for sale, or distributed, as the Court considers just; and

E. Enter an order awarding HDMI Licensing such other and further relief as the Court deems just and proper.

Dated: this 11th day of April, 2016.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

/s/ Michael J. McCue
Michael J. McCue (SBN 296425)
GT. Warren Bleeker (SBN 210834)
Jonathan W. Fountain (NV Bar No. 10351)
(*Pro hac vice* application to be submitted)
655 North Central Avenue, Suite 2300
Glendale, CA 91203
Telephone: 626.795.9900
Facsimile: 626.577.8800
E-mail: mmccue@lrrc.com
E-mail: jfountain@lrrc.com

*Attorneys for Plaintiff*
*HDMI Licensing, LLC*